# Curtis *versus* Cook.

The Act of 26th April 1855, is not to be construed so as to prohibit a judgment-creditor, whose judgment was entered at the time of extending a part of the defendant's real estate, at the suit of another creditor, from issuing execution and levying upon other real estate of the defendant not included in the extent.

The Act of 1855 is a remedial one, and not to be extended beyond the mischief which it was intended to remedy.

ERROR to the Common Pleas of *Erie county.*

This was a writ of *fieri facias*, issued on a judgment in favour of John Curtis against Joseph L. Cook; which was levied on a part of the defendant's real estate, and subsequently set aside by the court.

On the 20th December 1857, John Curtis obtained a judgment against the defendant, in the court below, for $1106.

On the 14th October 1858, a *fieri facias* was issued against the defendant, at the suit of Weiller & Ellis, elder judgment-creditors, by virtue of which a levy was made on five different pieces of real estate belonging to the defendant; an inquisition was held, and the property extended at the annual rental of $1600. The defendant accepted the premises at the valuation.

[Curtis v. Cook.]

On the 28th December 1858, the plaintiff issued this writ of *fieri facias*, and caused the same to be levied on other real estate of the defendant, not included in the extent.    This property was bound by the lien of the judgment, but had been aliened by the defendant on the 17th June 1858.    An inquisition was held, and the property condemned; and on the 22d March 1859, the court below, on application of the defendant, set aside the writ and all procedings under it; being of opinion that the issuing of it was prohibited by the Act 26th April 1855: *Brightly's Purd.* 1125.

The plaintiff, thereupon, sued out this writ and here assigned the same for error.

*J. C. Marshall*, for the plaintiff in error.    The Act of 1855 is not to be extended beyond the mischief which it was intended to remedy, the holding of several inquisitions upon land which had already been extended.

*Walker* and *Vincent*, for the defendant in error, cited and relied upon the words of the Act of 26th April 1855: *Brightly's Purd.* 1125.

The opinion of the court was delivered by

STRONG, J.—On the 20th of December 1857, the plaintiff recovered a judgment against the defendant, in the court of Common Pleas of Erie county.    At that time, there were six other judgments in the same court, which were liens upon the lands of the defendant.    Upon two of these other judgments, writs of *fi. fa.* were issued, and levies were made upon five distinct parcels of real estate.    Inquisition was held on the 29th day of October 1858.    The property levied upon was not condemned, but the yearly rents or profits beyond all reprises were assessed at $1600.    Under notice given according to the Act of Assembly, the defendant then elected to retain the properties at the annual valuation and appraisement made by the inquest.    Subsequently to this inquisition, the plaintiff issued an execution upon his judgment, caused it to be levied upon another tract of land not included in the levy and extent, and upon inquisition being held, it was condemned.    At the instance of the defendant, the court of Common Pleas then set aside this levy and inquisition, and this decision of the court is assigned for error.    The learned judge, not without hesitation, was of opinion that the plaintiff was prohibited from making such a levy and causing such an inquisition to be made by the Act of Assembly of April 26th 1855, inasmuch as his judgment had been entered when the first inquisition upon the defendant's other five properties was taken.    The question raised by this record, therefore, is whether a plaintiff who has a judgment entered at the time when, at the suit of

[Curtis *v.* Cook.]

another judgment-creditor, inquisition and extent of a defendant's real estate have been made, if the real estate be accepted by the defendant at the valuation, is precluded from proceeding to have a levy made under his judgment, and inquisition taken upon other lands of the defendant not included in the levy and extent made under the first execution. The answer to this question must depend upon the construction which ought to be given to the Act of April 26th 1855. By that, it is enacted " that in all cases of an inquisition and extent of real estate, and the acceptance of the same by the defendant or defendants, or other person or persons claiming under him or them, as provided for in the second and third sections of the act of the thirteenth of October, Anno Domini one thousand eight hundred and forty, entitled 'An Act relating to Orphans' Court and for other purposes,' said act shall be construed not to permit any second or other inquisition and extent pending the first, upon any writ issued upon any judgment entered in the court of the proper county at the date of such inquisition; but any plaintiff in a judgment, or other person claiming to have a lien upon *said real estate*, may proceed to collect the same in the manner provided in the fourth section of said act, in the proper court of the city or county in which said real estate is located."

Does this act apply only to second or other levies and inquisitions upon lands already extended, or does it embrace and prohibit levies and inquisitions upon all other lands of the debtor within the county? It must be admitted, that the words of the act are broad enough to embrace all the debtor's real estate, whether extended or not. But the act is remedial. It is, therefore, to be construed with reference to the mischief which the legislature intended to remove. That mischief was, that after real estate of a debtor had been levied upon at the suit of one creditor, after inquisition thereon had been returned without condemnation, and after it had been accepted at the yearly rental affixed, other judgment-creditors, whose judgments had been submitted to the first inquest, and had been adjudged insufficient to condemn the property, were at liberty to try the same question again by a second inquisition. Thus, the debtor was subjected to the payment of additional costs, and a different rental might be assessed by the second inquisition, or the property on the second trial might be condemned. If the yearly valuation, as fixed by the successive inquests, was not the same, there arose at once a difficulty in determining at which rate the debtor should pay, when retaining the property under the Act of October 13th 1840. These were the mischiefs in view of the legislature, when the Act of April 26th 1855 was passed, and it was intended as a remedy for them. It ought not to be extended beyond its purpose, beyond providing a remedy for the evils which it was designed to remove. Even thus

[Curtis *v.* Cook.]

construed it is sufficiently onerous upon creditors. It makes no provision for notice to them of the inquisition held under the first execution. So far, therefore, as relates to the lands first levied upon and extended, they are concluded by an inquisition of which they had no notice. But other lands of the debtor, not extended, are not submitted to the consideration of the inquest. There has been no inquiry and no adjudication as regards them. A levy and inquisition upon them is not attended by the mischiefs which called forth the legislative action. Such an inquisition cannot, therefore, be held to be within the statutory prohibition. That the legislature intended only to prevent a second inquisition upon the same land which had been extended under the first, appears probable also, from the concluding part of the act, in which it is provided, that " any plaintiff in a judgment, or other person claiming to have a lien upon said real estate, may proceed to collect the same in the manner provided by the fourth section of the Act" of 1840. The " said real estate" here spoken of, is the real estate upon which the first inquisition has been held. This indicates that no other was within the view of the legislature.

It is worthy of observation, that the Act of April 26th 1855, does not prohibit an execution at the suit of a judgment-creditor` whose judgment was a lien at the time of the first inquisition. Such a creditor is at liberty to sue out a *fi. fa.* upon his judgment, notwithstanding a previous extent of a part of the debtor's property at the suit of another creditor. Now it can hardly be supposed, that the legislature, while preserving to him this right, designed to exempt any portion of the debtor's land from liability to seizure, especially when that which is exempted is to be designated by the action of another creditor, over whom he has no control. Yet, if the construction given to the act by the court below, be correct, it may be in the power of the first execution-creditor to protect a large portion of a debtor's real estate from seizure and inquisition at the suit of all other judgment-creditors, even though the liens of their judgments be superior to that of his. This he may do, by causing his execution to be levied upon one or more parcels, and having an extent made. He may (as was done in this case) procure a levy and inquisition upon several tracts of land, and cause them to be extended, when separately each must have been condemned, and when each would have satisfied his judgment. This may done in collusion with the debtor, and for the very purpose of preventing a sale of any portion of the debtor's property, while a large part is not levied upon, and intangible by other creditors. The legislature have not opened a door for the entry of such abuses. This would be making the statute an instrument of mischief greater than those it was designed to remove. We hold, therefore, that the Act of Assem-

[Curtis *v.* Cook.]

bly does not prohibit a levy and inquisition upon real estate not included in the first extent.

This disposes of all that is legitimately presented by the record.

        The order of the Court of Common Pleas setting aside the levy and inquisition is reversed, and the record is remitted for further proceedings.